UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
PHL VARIABLE INSURANCE CO.,

                                                  09 CV 1223 (SJ)

            Plaintiff,

                                                  <u>MEMORANDUM</u>
- v -                                               <u>AND ORDER</u>

MORRIS HERSKO.

            Defendant.

------------------------------------------------------X

A P P E A R A N C E S:

DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
By:   Patrick F. Feeley
       Stephen M. Raab
**Attorneys for Plaintiff PHL Variable Insurance Co.**

SCHINDEL, FARMAN, LIPSUS
GARNER & RABINOVICH, LLP
14 Penn Plaza, Suite 500
New York, NY 10019
By:   Ira S. Lipsius
       David BenHaim
**Attorneys for Defendant Morris Hersko**

JOHNSON, Senior District Judge:

Presently before the Court are cross-motions for summary judgment in a contract dispute concerning the payment of a broker's commissions on a life insurance policy issued to the William Greenwald Irrevocable Trust ("Greenwald Trust"). Hersko ("Hersko") brokered the subject policy for PHL Variable Insurance Company ("PHL"), a subsidiary of The Phoenix Companies, Inc., pursuant to a broker agreement (the "Broker Agreement" or "Agreement") in December 2007, but was backdated to July 2007 ("Greenwald Policy").

Under the terms of the Broker Agreement, commissions on a life insurance policy are to be paid on a bifurcated rate structure: (i) 90% of the first-year premiums ("First Year Commissions" or "FYC")—up to a certain maximum ("Commission Target Premium" or "CTP"); and (ii) a significantly lower rate of 1% following the first-year premium. At issue here is whether the Broker Agreement's higher 90% commission rate applies only to premiums the Greenwald Trust paid *"during"* the first year of the Greenwald Policy or whether it applies to premiums the Greenwald Trust paid *"for"* the first year of the Greenwald Policy year regardless of when the premium payment was actually made.

PHL moves from summary judgment seeking to recover purported overpayments it made to Hersko and urges the Court to interpret the Broker Agreement as providing for the higher 90% rate only with respect to premium payments made *"during"* the first year of the Greenwald Policy, or what PHL defines as "the first certificate year." Hersko cross-moves for summary judgment

2

arguing that he is entitled to have the 90% commission rate apply to premiums paid *"for"* the first policy year even if the premium was not actually paid during the policy year. Hersko also counterclaims alleging that PHL violated New York General Business Law § 349, a consumer-oriented statue that prohibits deceptive and misleading business practices.

As set forth more fully below, the Court concludes, that the relevant language of the Broker Agreement is sufficiently clear that its import may be determined as matter of law and without an evidentiary hearing as to the parties' intent. The Court finds that PHL has failed to raise any material question of fact with respect to Hersko's entitlement to judgment as matter of law under a breach of contract theory. The Court finds, however, that Hersko has failed to properly plead his New York state law counterclaim. Accordingly, PHL's summary judgment motion is DENIED in part and GRANTED in part, and Herkso's summary judgment motion is GRANTED.

## I. BACKGROUND

The facts relevant to the motions are as follows:

PHL engaged Hersko pursuant to the Broker Agreement, which authorized Hersko to market and sell PHL insurance products in November 2007. Shortly thereafter, in December 2007, Hersko brokered the sale of a universal life insurance policy to the Greenwald Trust. The resulting Greenwald Policy was back-dated at the parties' request so that certain calculations and rates associated with the policy

would assume that the insured was 78-years-old for the first policy year. (Docket Entry ("DE") 28, Aff. of Nancy B. Turner in Supp. of PHL's Mot. for Summ. J. ("Turner Aff.") at ¶ 5.) Thus despite the fact that the Greenwald Policy was issued in December 2007, its effective date is July 10, 2007.

The Greenwald Trust made the following premium payments to PHL, totaling $601,840:

1. $250,000, on December 18, 2007 (the "First Premium Payment").
2. $150,000, on August 29, 2008 (the "Second Premium Payment").
3. $201,840, on September 12, 2008 (the "Third Premium Payment").

PHL paid Hersko 90% commissions on the First and Second Premium Payments. Subsequently, PHL refused to pay commissions on the Third Premium Payment, and requested the return of the commissions paid on the Second Premium Payment. Thereafter, in December 2008, Hersko filed suit against PHL asserting a breach of contract claim and seeking commission on the Third Premium Payment, at the 90% First Year Commissions rate. In March 2009, PHL, in turn, commenced its own action against Hersko asserting claims for breach of contract and unjust enrichment, seeking the return of $131,485.20 in commissions it paid to Hersko on the Second Premium Payment. Hersko counterclaimed asserting a breach of contract claim as well as a claim under New York State's deceptive and/or unfair practices act, N.Y. Gen. Bus. Law § 349. The actions were combined before this

Court through diversity jurisdiction, 28 U.S.C. § 1332, and both parties have moved for summary judgment.*

The relevant sections of the relevant instruments are as follows:

Section 3.1 of the Broker Agreement provides that "[PHL] shall pay compensation as provided in Schedule 3.1," which, in turn, provides that PHL would pay the Broker "First Year Commissions" equal to 90% of "First Year Premiums" and "Up to Commission Target Premium" for the type of universal life insurance policy at issue in this case, and at a lower rate for each year thereafter. (DE 28, Ex. 1, the Broker Agreement at PHL 0007.) Schedule C of Section 3.1(6) further defines First Year Commissions as "those commissions paid on those premiums paid *for* the first policy year." (Id. at PHL 0022 (emphasis added).) The Broker Agreement, however, does not expressly defines the terms "policy year," or "first policy year." These key terms are not elsewhere defined by related instruments.

The Greenwald Policy does define the term "Certificate Year" as "the one-year period beginning on the Certificate Date up to, but not including, the first Certificate Anniversary." (DE 28, Ex. 4, the Greenwald Trust at PHL 0084.) Given the parties' agreement to backdate the December 2007 Greenwald Policy to July 10, 2007, the first Certificate Year hence is the period between the Certificate Date of July 10, 2007, up to but not including, July 10, 2008. (Id.)

---

* Hersko, who filed suit first, is perhaps more properly designated the "Plaintiff," and PHL, the "Defendant." The Court, however, defers to the current designations.

5

Additionally, Section 3.8 of the Broker Agreement provides "If [PHL] pays higher compensation to a Broker than the compensation set forth in Schedule 3.1 for business written under this Agreement, then Broker shall be obligated to reimburse [PHL] for such payment." (DE 28, Ex. 1, the Broker Agreement at PHL 0008.) Finally, Section 3.5 of the Agreement provides that the "Broker shall promptly repay to [PHL] the amount of any other charge back of compensation in connection with the Products that have been issued pursuant to this Agreement in accordance with Section 3.1." (Id. at PHL 0007.)

## II. **LEGAL STANDARD**

### A. Summary Judgment Standard

A movant is entitled to summary judgment as a matter of law only if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Burke v. Bevona, 931 F.2d 998, 1001 (2d Cir. 1991). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48. Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## B. Connecticut Contract Law

The resolution of the cross-motions for summary judgment involves the determination of the construction to be given the Broker Agreement. Section 10.13 of the Agreement provides that "[with] respect to [PHL], this Agreement shall be governed by the laws of the State of Connecticut without regard to Connecticut choice of law rules." (DE 28, Ex. 1, the Broker Agreement at PHL 0016.) Generally, New York federal courts enforce choice of law provisions contained in contracts. RJE Corp. v. Northville Industries Corp., 329 F.3d 310 (2d Cir. 2003); Schiavone Constr. Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996). Accordingly, Connecticut law governs the substantive contract dispute here.

Under Connecticut contract law, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . ." Levine v. Massey, 654 A.2d 737, 740 (Conn. 1995) (citations and internal quotation marks omitted). "If, however, the language is not clear, then the intention of the parties as represented in the contract becomes a question of fact . . . . If the fact in question is genuinely material to the resolution of the issue, then it is not the proper subject of summary judgment." Best Friends Pet Care, Inc. v. Design Learned, 823 A.2d 329, 335 (Conn. App. 2003) (citations and internal quotation marks omitted).

Under these principles, "a contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction."

Poole v. City of Waterbury, 831 A.2d 211, 224 (Conn. 2003) (citations and internal quotation marks omitted). "[T]he language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Id. (citation and internal quotation marks omitted.) "If the intent of the parties is not clear and certain from the language of the contract itself . . . . [or] if the language of the contract is susceptible to more than one reasonable interpretation," the contract will be deemed ambiguous. Enviro Express, Inc. v. AIU Ins. Co., 901 A.2d 666 (Conn. 2006). "The mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." Goldberg v. Hartford Fire Ins. Co., 849 A.2d 368, 373 (Conn. 2004). "Although the fact that (parties] disagree about the meaning of their contract does not demonstrate its ambiguity . . . [if] . . . contract provision[s] are internally inconsistent, a question of fact is involved." Gingras v. Avery, 878 A.2d 404 (2005) (citation and internal quotation marks omitted). "Extrinsic evidence is always admissible to explain an ambiguity appearing in the instrument." Poole, 831 A.2d at 224.

Finally, "a contract is to be construed as a whole and all relevant provisions will be considered together." HLO Land Ownership-Associates Ltd. v. Hartford, 727 A.2d 1260, 1264 (Conn. 1999). A court should not adopt an interpretation that would render other language in the contract superfluous because every provision should be given "operative effect." Kelly v. Figueiredo, 610 A.2d 1296, 1298 (Conn. 1992).

## III. **DISCUSSION**

### A. **The Breach of Contract Claim**

In their respective motions for summary judgment, both parties submit that the Broker Agreement is unambiguous. On the one hand, PHL contends that under the Agreement's unambiguous terms, Hersko is only entitled to commissions on premiums paid ***during*** the first policy year or Certificate Year. PHL reasons that although the "first policy year" is not defined as a term in the Broker Agreement, a related, but separate instrument to the Agreement—the Greenwald Policy—expressly defines the term "Certificate Year," as "the one-year period beginning on [July 10, 2007] up to, but not including [June 10, 2008]." (DE 28, Ex. 2, the Policy at PHL 0084). Borrowing this term, PHL advances that premium payments the Greenwald Trust made on or after June 10, 2008, as the disputed Second and Third Premium Payments here indisputably were, cannot be eligible for the higher 90% FYC rate.

On the other hand, Hersko contends that the Broker Agreement compels a summary judgment ruling in his favor because, unlike PHL borrowed definition, the Broker Agreement expressly defines First Year Commissions as "those commissions paid on those premiums paid ***for*** the first policy year." (DE 28, Ex. 1, Schedule C of Section 3.1.6 of the Broker Agreement at PHL 0022 (emphasis added)). Hersko reasons that this express provision entitles him to the 90% FYC rate on premiums payments made ***for*** the first policy year—and not just on those payments made ***during*** the first policy year—regardless of whether or not such

9

payments were actually paid between the Certificate Year July 10, 2007 and July 10, 2008, as defined in the Greenwald Policy.

The Court agrees with Hersko. As indicated above, in determining the import of the contract language, "the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Poole, 831 A.2d at 224. "The plain, common or normal meaning of language will be given to the words of a contract unless the circumstances show that in a particular case a special meaning should be attached to them." Tallmadge Brothers, Inc. v. Iroquois Gas Transmission Systems, L.P., 746 A.2d 1277, 1289 citing, 11 S. Williston, Contracts (4th Ed. 1999) § 32.3.

Here, according to Merriam-Webster's Collegiate Dictionary (11th ed. 2003), the preposition *"for"* is "used as a function word to indicate purpose . . .[or] an intended goal." The Court finds that this language is not ambiguous—especially in the light of the fact that the instrument at the heart of this dispute is a back-dated insurance policy. A back-dated instrument, if taken at face value, necessarily truncates the time-period for which a broker can receive 90% commissions on premiums paid during the first policy year to less than a year. The Court finds that the preposition *"for"* rather than *"during"* thus more reasonably reflect the context of the Agreement. See generally, Downs v. National Casualty Co., 152 A.2d 316, 319 (1959). ("A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings.")

The Court looks next to evaluate whether PHL has made a particular case for a special meaning to attach to the word *"for"* rather than its plain meaning. PHL urges the Court to adopt an interpretation of the Broker Agreement based on the "certificate year" definition supplied by the Greenwald Policy. Given the finding that the dispute language of the Broker Agreement is not ambiguous, the Court declines. See generally, Landry v. Spitz, 925 A.2d 334, 350-351 (Conn. App. Ct. 2007) (explaining that extrinsic evidence is permissible to determine the meaning of "an ambiguous provision" of a contract, but not "to vary or contradict the explicit terms of the agreement").

PHL further argues essentially that the plain language of Schedule C cannot control in light of some of the other provisions of the Broker Agreement and extrinsic evidence.

Concerning the other provisions of the Agreement, PHL contends in sum that: (i) the Commissions Table, which ties commissions to a particular "Policy Year," indicates that the parties did not intend to have the FYC 90% rate apply regardless of when the premium is paid; (ii) the language of Schedule 3.1.6(d), which provides that "a premium shall be regarded as paid in the 'calendar year' when entered as paid in the accounting records," further supports its interpretation of the contract; (iii) Footnote(e) expressly provides for commissions rate to be paid based on a rolling target basis, but does not apply to instruments similar to the Greenwald Policy Because this rolling target treatment is analogous to the effective remedy Hersko seeks here, Hersko breach of contract claim should be denied. (DE

11

28, Ex. 1, the Broker Agreement at PHL 0021.) The Court finds that these other contract provisions do not conflict with the governing language of Schedule C. As such, these provisions do not overcome the plain meaning of phrase "for the first year" found in Schedule's C. Specifically, (i) the Commissions Table does not address the fact that the instrument at issue here is a back-dated insurance policy; (ii) Schedule 3.1.6(d), does not address the key term "policy year;" and Footnote (e) is irrelevant because it doesn't just exclude insurance policies like the Greenwald Policy, but excludes the universe of all instruments that have an annual premium.

Concerning the extrinsic evidence, PHL points to its different accounting treatment of the Second and Third Premium Payments in its own annual statements in support of its interpretation and submits an email correspondence between the parties, dated December 27, 2007, wherein PHL wrote to Hersko to "confirm" that Hersko understood the insurer's warning concerning the potential for commission values to be less than provided for, based on the frequency and timeliness of the premium payments. (DE 28, Ex. 5, the Policy Illustration at PHL 0137). This warning was provided to Hersko via an extrinsic but related document known as the Policy Illustration. (DE 28 Ex. 4, the Policy Illustration at PHL 104). The Court finds that this material is simply not probative. With respect to the accounting issue, PHL's accounting speaks only to PHL's unilateral actions and does not shed light on the parties' mutual intent. With respect to the warning in the Policy Illustration, the Court notes that the Policy Illustration makes no explicit reference to the Broker

Agreement and is itself ambiguous. Under the well-settled principles of contract law, such extrinsic evidence cannot alter the interpretation of the Broker Agreement.

Accordingly, with respect to the breach of contract claim, PHL's motion for summary is DENIED and Hersko's motion is GRANTED.

### B. New York Gen. Bus. Law § 349 Claim

The Court must dismiss Hersko's counterclaim brought under N.Y. Gen. Bus. Law § 349. It is well-settled New York state law that to state a claim for deceptive acts and/or unfair practices claim under Gen. Bus. Law § 349, the pleading must allege the following: (1) the challenged act must be consumer-oriented; (2) the act was misleading in a material way; and (3) the victim suffered injury as a result of the act. Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). Here, Hersko has failed to establish the sine qua non of a G.B. L. § 349 claim—the challenged action must be consumer-oriented. The instant claim arose out of a broker agreement for the sale of insurance between sophisticated parties. New York state law is clear: a private claim for breach of contract may not be re-stylized as a Section 349 claim. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995) (holding that private contract disputes unique to the parties would not fall within the ambit of G.B.L. § 349); see also (New York University v. Continental Ins. Co., 87 N.E.2d 763, 770 (1995) (dismissing a similar insurance contract dispute had not met the "consumer oriented" requirement for a Section 349 claim). Moreover, the twin consumer-

oriented concerns of disparate bargaining power and the use of standard forms supplied to the consuming public at large are not implicated here. Cf. Oswego, 85 N.Y.2d at 25. Hersko's N.Y.G.B. L. § 349 claims is accordingly DISMISSED.

## CONCLUSION

Based on the foregoing, PHL's motion on a breach of contract claim is DENIED and Hersko's cross- motion is GRANTED. PHL's summary judgment motion is GRANTED to the extent it seeks dismissal of Hersko's counterclaim under N.Y. Gen. Bus. Law § 349.

SO ORDERED.

DATED: September 06, 2011       _____/s/_____
         Brooklyn, New York      Judge Sterling Johnson Jr. U.S.D.J.